## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

**DOUGLAS FOLAND,**            CASE NO.:    19-cv-171
        Plaintiff,
**v.**

**CLEAResult Consulting, Inc.**        **PLAINTIFF DEMANDS A JURY**
        Defendant.

Collin H. Nyeholt (P74132)
LAW OFFICES OF
CASEY D. CONKLIN, PLC
4084 Okemos Road, Ste B
Okemos, MI  48864
(517) 522-2550
collin@caseydconklin.com

### COMPLAINT and JURY DEMAND

### JURISDICTION AND VENUE

1. Plaintiff DOUGLAS FOLAND is a permanent resident of the City of Perry, Michigan which is within the jurisdictional bounds of the Western District of Michigan.  His principal place of employment, at the time of the events described in this Complaint, was at a facility owned and operated by Defendant in the City of East Lansing, MI which is also within the jurisdictional bounds of the Western District.

2. Defendant CLEAResult Consulting, Inc. is a for-profit corporation organized under the laws of Texas that maintains a permanent business location and physical presence in East

Lansing, Michigan. The events giving rise to this Complaint occurred substantially in this business location.

3. This claim stems from Defendant's actions towards Plaintiff during the course of his employment that occurred in East Lansing, MI.

4. The Court may exercise *general in personem* jurisdiction over the Defendants by reason of their permanent business presence within the Western District. In the alternative, the Court may exercise *specific jurisdiction* over the dispute because the transaction or occurrence giving rise thereto resulted from Defendants' business activities within, and directed towards, the Western District of Michigan.

5. This is a claim for violation of the Americans with Disabilities Act of 1990, 42 USC § 12101 *et seq*, as amended by the ADA Amendments Act of 2008, Pub L No 110-325, 122 Stat 3553 (2008).

6. The Court may exercise subject matter jurisdiction over the claims stemming from federal law pursuant to 28 USC § 1331.

7. Venue is properly laid in this forum pursuant to 28 USC §§ 1331(b)(1) and (b)(2).

## COMMON ALLEGATIONS

8. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

9. Plaintiff Douglas Foland was employed by Defendant CLEAResult for thepast 8 ½ years. His last title with the organization was Senior Marketing Outreach Specialist.

10. Plaintiff's direct supervisor, at the time of the 2016 incident described in this Complaint was Tony Walker. As of the 2018 incident, his manager was Brad Warrenburg.

11. Plaintiff had an exemplary work history with Defendant and performed admirably as a highly valued, widely recognized building science expert.

12. In April of 2016 Defendant was part of an annual C&I Energy Conference that occurred at Firekeepers Casino in Battle Creek, Michigan.

13. On April 5, 2016 Mr. Foland arrived at the casino to help set up for the conference. After completing his work duties, he attended the casino that evening with a personal friend. While attending the casino, he and the friend ran into several other CLEAResult staff members: Paul Johns, Amanda Pawloski, Cindy Schweitzer, and Sean Williams.

14. The exchange between Plaintiff and the CLEAResult staff was unremarkable. Plaintiff had consumed only a single drink and was not drunk to excess. He did not say or do anything unprofessional, unlawful, or out of the ordinary for professional persons involved in an evening entertainment during a business conference.

15. The next morning, April 6, 2016, Tony Walker confronted Plaintiff about the interaction with the other CLEAResult staff members the night before. Walker had not been present himself, but he informed Plaintiff that "Amanda [Ms. Pawloski] said you were acting drunk and talking about weed" or words to that effect. He also made the comment that Cindey Schweitzer had said something to the effect that "any employee whose actions threaten our relationship with the utilities will face immediate termination" or words substantially to that effect. Mr. Foland was *not* drunk, had *not* been talking about marijuana, and was *not* engaged in any behavior at Firekeepers that would threaten CLEARestuls' interests. He told Mr. Walker just that. Walker responded that he would "take this up with Tim Mahler" the Vice President of CLEAResult, or words to that effect.

16. It should be noted that later, on March 15, 2018 Mr. Foland voluntarily underwent a hair follicle test at a certified facility. Such tests are impossible to cheat and go back up to 90 days. Mr. Foland tested negative for any illegal drugs.

17. Mr. Walker, upon information and belief, formed the misperception that Plaintiff suffered from alcoholism as a result of this exchange. He began mistreating him in the workplace and subjecting him to heightened and unreasonable scrutiny as a result.

18. On April 11, 2016 Plaintiff went and visited Paul Johns in his office at CLEAResult where he discussed the April 5, 2016 interaction for 20 minutes. Upon information and belief, Mr. Johns did not note any misconduct in Mr. Foland's employment file as a result.

19. Despite the utter absence of any showing of misconduct, Mr. Walker persisted to bother Mr. Foland because of his ill conceived belief that he suffered from alcoholism, as a result of the rumors he had heard from Pawloski.

20. Walker's harassment came to a head some time later when he accused Plaintiff, during a conference call with their mutual supervisor Brad Warrenburg, of "drinking at lunch time" and "using the company credit card to pay for it." Walker made the statement that he had "seen lots of Bud Lights and meatballs" on the credit card reports. This accusation was purely and utterly false, and without any basis in fact. It was born utterly from Mr. Walker's animus towards Plaintiff, based on his belief that he suffered from alcoholism.

21. On February 1, 2018 Plaintiff complained to Defendant's Human Resources Representative, Julie Anderson, about Mr. Walker's inappropriate, and unfounded accusations that he had been using the company credit card to purchase alcohol. Anderson told him that it was "wholly illogical" of Mr. Walker to accuse Plaintiff of purchasing alcohol on the company credit card. The result of the conversation was that, in light of Plaintiff's concerns regarding false allegations of improperly using the company card to buy alcohol, Defendant's HR agreed to allow Plaintiff to audit his credit card purchases to determine if he had in fact been misusing the card and present the results of same.

22. Mr. Foland expressed to HR, during this meeting, that he believed Mr. Walker's false allegations of impropriety towards him were based on his mistaken belief that he suffered from alcoholism. He also requested, both verbally and in writing, that she note his complaint in this respect in his employee file.

23. CLEAResult's company policies allow employees to purchase a limited number of alcoholic beverages at any work-related meal for which the company card is used. The audit confirmed that Plaintiff's purchases of alcoholic beverages conformed with CLEARestult's policies.

24. On February 5, 2018 Plaintiff met with his supervisor, Brad Warrenburg, and Program Portfolio Manager Amanda Pawloski via Skype with HR Representative Julie Anderson. The topic of the conversations was the results of the meal audit. Conspicuously absent from this conversation was Mr. Walker. Those present affirmed HR's finding that Plaintiff had not violated the meal policy with unauthorized purchase of alcoholic beverages and, thus, Mr. Walker's allegation was false.

25. Plaintiff discussed the mistreatment and hyperscrutiny he had received from Walker, expressed his belief that he was being falsely accused of misconduct based on his mistaken belief that he was an alcoholic, and requested that it stop.

26. On February 9, 2018 Plaintiff's employment with CLEAResult was terminated.

27. Shortly after, in a pure act of vindictiveness, Tony Walker and Brad Warrenburg filed for personal protection orders against Mr. Foland in the Genesee County and Ingham County Circuit Courts. In his application for the PPO, Mr. Walker stated that he believed Mr. Foland to be under the influence of "alcohol and weed." Mr. Walker had not seen Mr. Foland since February 6, 2018 at this point, and could not have known if he was under the influence. He so alleged because "knowing the type of women he [Plaintiff] associates himself with, I believe Doug [Plaintiff] was under the influence of these substances." The Genesee County Circuit Court found no good cause for Walker's PPO, and Ingham County Circuit Court found no good cause for Warrenburg's.

28. Mr. Foland timely filed an EEOC charge, alleging disability discrimination and retaliation, which was assigned EEOC Case Number 471-2019-357.

29. On or about December 18, 2018 the EEOC transmitted its 90 day right to sue letter. This lawsuit timely follows.

## COUNT 1 – Disability Discrimination
### *In Violation of the Americans with Disabilities Act, 42 USC § 12101 et seq, as amended*

30. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

31. Defendant employed 15 or more employees, including part time employees, for each workday in each of 20 or more calendar weeks in the current or proceeding year of the date of Plaintiff's termination and is, therefore, a "covered employer" as that term is defined by 42 USC § 12111(5)(A) and is a "covered entity" as that term is used in 42 USC § 12111(2).

32. At the time of the events described in this Complaint Plaintiff was regarded as suffering from the condition of alcoholism. Alcoholism is a disability, as that term is defined by the ADA. The Sixth Circuit has held that a plaintiff may maintain a claim for disability discrimination when their employer subjects them to heightened scrutiny, and eventual termination, based on their belief that they suffer from alcoholism. *Moorer v. Baptist Memorial Health Care System,* 398 F.3d 469 (6th Cir. 2005).

33. Plaintiff is a qualified individual with a disability as that term is defined by 42 USC 12102(1).

34. Plaintiff possessed the appropriate educational background, employment experience, skills, licenses, and other requirements of the position of Senior Marketing Outreach Specialist. Plaintiff, in fact, satisfactorily performed and even excelled in this position for ten years prior to his termination.

35. Plaintiff could perform the essential functions of his position as an Senior Marketing Outreach Specialist with or without accommodations. He demonstrated this by, for the course of *10 years*, working without any accommodation whatsoever.

36. Plaintiff was subjected to the following adverse employment actions:

    a. Hyperscrutiny and at work harassment by reason of his supervisor's belief that he suffered from alcoholism,

    b. False and baseless accusation that he had misused the company credit card to purchase alcohol, stemming from his supervisor's belief,

    c. Termination from his employment.

37. Plaintiff was discriminated against in a way prohibited by the ADA when Defendant

    a. Harassed him because of his perceived disability through heightened scrutiny of his performance,

    b. Terminated his employment because of his perceived alcoholism.

38. Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

    a. Loss of pay and benefits,

    b. Time value of money for the wrongful lost use of the funds lost as a result of Defendant's wrongful conduct, which may be compensated at an appropriate statutory rate of interest.

    c. Professional humiliation and loss of standing in the business community by reason of his termination of employment,

    d. Humiliation, stress, anger, and outrage resulting from the willful and wanton violation of his rights described herein, which are compensable with an award of exemplary damages.

    e. Attorney's fees and courts costs in bringing and maintaining the instant action.

## COUNT 2 –RETALIATION
### *In Violation of the Americans with Disabilities Act 42 USC § 12101 et seq, as amended*

39. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

40. The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." Further, the ADA makes it unlawful to "coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]." 42 USC § 12203(b).

41. Plaintiff engaged in activity protected by the ADA when he:

    a. Complained to Defendant's Human Resources Department on or about February 1, 2018 that his manager and direct supervisor, Tony Walker, was harassing him because of his perceived alcoholism,

    b. Complained to Defendant's Humanr Resources Department on or about February 1, 2018 that Tony Walker had falsely, baselessly, and inaccurately accused him of improperly purchasing alcohol on the company credit,

    c. Complained to Amanda Powloski, Brad Warrenburg, and Julie Anderson on or about February 5, 2018 that he had been falsely accused of abusing the company credit card to purchase alcohol, and suffered harassment and hyper scrutiny, because of his manager's incorrect belief that he was an alcoholic and requesting that it cease.

42. The Defendant retaliated against Plaintiff for the protected conduct above by terminating his employment on or about February 9, 2018.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1. An AWARD of pay and benefits lost by Plaintiff resulting from his wrongful termination in an amount not less than $150,000.

2. Such other COMPENSATORY damages as may be appropriate to compensate Plaintiff for Defendant's unlawful conduct, to the statutory maximum of $300,000,

3. EXEMPLARY damages, in whatever amount the Court should deem appropriate, pursuant to Michigan law,

4. PUNITIVE damages, in whatever amount the Court should deem appropriate, pursuant to 42 USC § 1981a(b)(3),

5. An AWARD of Attorney's fees, in an amount determined reasonable by the Court, so wrongfully incurred in bringing this action, pursuant to the various statutes identified herein,

6. Pre and post judgment interest at the appropriate statutory rate, and

7. Such other relief as this Court may deem just and appropriate in law or in equity.

**PLAINTIFF DEMANDS A JURY**

Respectfully Submitted,

Dated: 3/6/2019

\_\_/s/ Collin H. Nyeholt\_\_\_\_\_
Collin H. Nyeholt,
Attorney for the Plaintiff